<span style="color:red">**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000135
29-JUL-2025
06:46 AM
Dkt. 111 OP**</span>

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

CITY & COUNTY OF HONOLULU AND HONOLULU BOARD
OF WATER SUPPLY, Plaintiffs-Appellees, v.
CHEVRON CORP; CHEVRON USA INC., Defendants-Appellants,
and SUNOCO LP; ALOHA PETROLEUM, LTD.; ALOHA PETROLEUM LLC;
EXXON MOBIL CORP.; EXXONMOBIL OIL CORPORATION; ROYAL
DUTCH SHELL PLC; SHELL OIL COMPANY; SHELL OIL PRODUCTS
COMPANY LLC; BHP GROUP LIMITED; BHP GROUP PLC; BHP HAWAII
INC.; BP PLC; BP AMERICA INC.; MARATHON PETROLEUM CORP.;
CONOCOPHILLIPS; CONOCOPHILLPS COMPANY; PHILLIPS 66;
PHILLIPS 66 COMPANY; AND DOES 1 through 100, inclusive,
Defendants-Appellees

NO. CAAP-22-0000135

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CCV-20-0000380)

JULY 29, 2025

WADSWORTH, PRESIDING JUDGE, AND McCULLEN, J., AND
CIRCUIT JUDGE COPELAND, J., IN PLACE OF NAKASONE, CHIEF JUDGE,
AND LEONARD, HIRAOKA, AND GUIDRY, JJ., ALL RECUSED

OPINION OF THE COURT BY WADSWORTH, J.

Plaintiffs-Appellees City and County of Honolulu and
Honolulu Board of Water Supply (together, **Plaintiffs**) have sued
several oil and gas producers (together, **Defendants**) alleging
that their marketing practices have misled the public about the

dangers of their products, contributing to climate change and resulting injuries to Plaintiffs. While the case has been said by some to raise novel legal issues, this appeal concerns an ordinary choice-of-law dispute between Plaintiffs and Defendants-Appellants Chevron Corporation and Chevron USA Inc. (together, **Chevron** or the **Chevron Defendants**). The Chevron Defendants, which until recently were both headquartered in California, brought a motion in the lower court to dismiss the case against them under California's anti-SLAPP (strategic lawsuit against public participation) law (the **Anti-SLAPP Motion**). The anti-SLAPP law is designed to protect persons from lawsuits intended to chill their free speech or petitioning activities related to public issues. The Chevron Defendants argued that California's Anti-SLAPP law bars Plaintiffs' claims in this case, because they arise from Chevron's speech on issues of public interest. They further argued that their Anti-SLAPP Motion should be judged under California law, rather than Hawaii's own anti-SLAPP law, which was more limited in scope than the California version when the motion was filed. The lower court rejected Chevron's argument that California law should apply and denied the motion.

The Chevron Defendants appeal from the "Order Denying Chevron Defendants' Special Motion to Strike and/or Dismiss the Complaint Pursuant to California's Anti-SLAPP Law" (**Order Denying Anti-SLAPP Motion**) entered on February 15, 2022, in the Circuit Court of the First Circuit (**Circuit Court**).[1] Chevron contends that the Circuit Court erred by: (1) failing to apply California's anti-SLAPP law, where California had the most significant interest in the Anti-SLAPP Motion; and (2) not granting the Anti-SLAPP Motion and dismissing Plaintiffs First Amended Complaint (**FAC**) with prejudice.

We hold that the Circuit Court correctly concluded that California law did not apply to Chevron's Anti-SLAPP Motion. In determining choice-of-law issues, Hawaiʻi courts look to the state with the most significant relationship to the parties and subject matter. See Mikelson v. United Servs. Auto. Ass'n, 107

---

[1] The Honorable Jeffrey P. Crabtree presided.

Hawaiʻi 192, 198, 111 P.3d 601, 607 (2005). This flexible approach involves assessing the interests and policy factors involved "with a purpose of arriving at a desirable result in each situation." Id. at 198, 111 P.3d at 607. Here, the Circuit Court considered the respective interests of California and Hawaiʻi implicated by the Anti-SLAPP Motion, including California's interest in protecting speech allegedly emanating from that state, along with Hawaii's interest in protecting its residents from the alleged misconduct and resulting harm suffered in Hawaiʻi. Based on a careful balancing of multiple relevant factors, the Circuit Court properly concluded that California law should not apply to the anti-SLAPP Motion.

We therefore affirm the Order Denying Anti-SLAPP Motion.

## I. Background

The Hawaiʻi Supreme Court's published opinion in City & Cnty. of Honolulu v. Sunoco LP, 153 Hawaiʻi 326, 537 P.3d 1173 (2023), provides a thorough summary of the procedural background of this case prior to late-2023.

As relevant to the current appeal, on March 22, 2021, Plaintiffs filed the FAC against Chevron and the other defendants. In summary, Plaintiffs allege: (1) greenhouse gas emissions, which are largely a byproduct of the combustion of fossil fuels, are causing global warming and climate disruption, which in turn has caused the atmosphere and oceans to warm, sea levels to rise, snow and ice cover to diminish, oceans to acidify, and hydrologic systems to change; (2) Defendants' conduct, including their efforts to deceive about the consequences of the normal use of their fossil fuel products and to conceal the hazards of those products, has caused a substantial portion of global atmospheric greenhouse gas concentrations, the attendant climate disruption, and Plaintiffs' injuries; (3) Defendants knew or should have known about the dangers associated with their fossil fuel products; (4) Defendants did not disclose these known dangers to consumers, the public, and regulators, and instead "affirmatively acted to

obscure those harms and engaged in a concerted campaign to evade regulation," including through misleading advertising; (5) in contrast to their public statements, a variety of Defendants' actions evidence their internal acknowledgment of the reality of climate change and its likely consequences; (6) Defendants' actions have increased the costs of mitigating the adverse effects of climate change; and (7) Defendants continue to mislead about the impact of their products on climate change through deceptive advertisements and promotional materials that do not disclose the risks of their products.

Plaintiffs allege that they have sustained damages caused by Defendants' failure to warn and deceptive promotion of their dangerous products. Plaintiffs claim that Defendants' conduct "is a substantial factor in causing global warming and consequent sea level rise and attendant flooding, erosion, and beach loss in the County; increased frequency and intensity of extreme weather events in the County, including hurricanes and tropical storms, 'rain bomb' events, drought, heatwaves, and others; ocean warming and acidification that will injure or kill coral reefs in the County's waters; habitat loss of endemic species in the County, and range expansion of invasive and disease carrying-pest species; diminished availability of freshwater resources; and the cascading social, economic, and other consequences of those environmental changes." Plaintiffs allege that due to Defendants' conduct, Plaintiffs have suffered damage to their facilities and property, incurred increased planning and preparation costs to adapt communities to global warming's effects, collected less tax revenue due to impacts on tourism, and suffered the cost of public health impacts such as an increase in heat-related illnesses.

Based on these allegations, Plaintiffs assert claims of public nuisance, private nuisance, strict liability failure to warn, negligent failure to warn, and trespass. Plaintiffs seek compensatory damages; equitable relief, including abatement of the nuisance; punitive damages; disgorgement of profits; attorneys fees; and costs of suit.

On June 2, 2021, the Chevron Defendants, then both California-domiciled corporations, filed the Anti-SLAPP Motion. Chevron asserted that California's anti-SLAPP law provides "a qualified immunity from suit for any 'cause of action' that 'aris[es] from any act' of the defendant that is taken 'in furtherance of the [defendant]'s right of petition or free speech . . . in connection with a public issue.'" (Quoting Cal. Code Civ. Proc. § 425.16(b)(1)[2/] (brackets in original).) Chevron contended that under Hawaiʻi choice-of-law rules, the Circuit

---

[2/] When the FAC and the Anti-SLAPP Motion were filed, Cal. Code Civ. Proc. § 425.16(b)(1) (2015) stated, in relevant part:

> (b)(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.
>
> (2) In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.
>
> (3) If the court determines that the plaintiff has established a probability that he or she will prevail on the claim, neither that determination nor the fact of that determination shall be admissible in evidence at any later stage of the case, or in any subsequent action, and no burden of proof or degree of proof otherwise applicable shall be affected by that determination in any later stage of the case or in any subsequent proceeding.
>
> . . . .
>
> (d) This section shall not apply to any enforcement action brought in the name of the people of the State of California by the Attorney General, district attorney, or city attorney, acting as a public prosecutor.
>
> (e) As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Court should apply California law to the Anti-SLAPP Motion, because "[a] defendant's home state has an overriding interest in applying its anti-SLAPP immunity to claims based on the defendant's speech[.]"  Chevron further contended that under California law, (1) the FAC was subject to anti-SLAPP immunity, because Plaintiffs' claims arise from speech on issues of public interest; (2) Plaintiffs' claims did not fall within any anti-SLAPP exception; (3) Plaintiffs could not carry their burden of showing "that there is a probability that [they] will prevail on the claim[s]," Cal. Code Civ. Proc. § 425.16(b)(1); and (4) as a result, the claims against Chevron should be stricken or dismissed.

Plaintiffs opposed the Anti-SLAPP Motion.  They contended that the FAC should be judged under Hawaiʻi law rather than California's anti-SLAPP statute.  They argued that Hawaiʻi law presumptively applies to all issues in the case, and Hawaiʻi has the greater interest in seeing its law applied here, because the case is based in Hawaiʻi tort law and has been brought by Hawaiʻi public entities to remedy injuries suffered in Hawaiʻi. Plaintiffs claimed that if similarly situated public entity plaintiffs in California brought the same nuisance claims under California law that Plaintiffs have asserted here, they would come within the anti-SLAPP law's "public enforcement" exception. Plaintiffs further argued that even if California's anti-SLAPP law applied, it would not bar Plaintiffs' claims, which target the conduct within the commercial speech exemption to the anti-SLAPP law.

Following an August 27, 2021 hearing, the Circuit Court entered the Order Denying Anti-SLAPP Motion, which denied the motion on choice-of-law grounds.  The court ruled that while Chevron's California domicile "clearly weighs in favor of applying California's anti-SLAPP law," that factor was "not dispositive" under governing law.  Several other factors weighed in favor of applying Hawaiʻi law, including:  "Plaintiffs obviously have specific, enduring, and substantial attachments to Hawaiʻi"; "[t]here are some Hawaiʻi defendants"; "[t]he alleged damages include harm to the shoreline, infrastructure, buildings,

and economy of Hawaiʻi"; "Hawaiʻi has its own anti-SLAPP law, [Hawaii Revised Statutes (**HRS**)] Chapter 634F,[3/] which is more limited than California's version" such that "Hawaiʻi's [sic] legislative policy does not favor the protection sought" by Chevron; and "California's anti-SLAPP law may not protect Chevron if a similar suit were brought in California by a California

---

[3/]     When the FAC and the Anti-SLAPP Motion were filed, HRS § 634F-2 (2016), known as the Citizen Participation in Government Act, stated, in relevant part:

> Notwithstanding any law to the contrary, including rules of court, upon the filing of any motion to dispose of a claim in a judicial proceeding on the grounds that the claim is based on, relates to, or involves public participation and is a SLAPP lawsuit:
>
> (1)     The motion shall be treated as a motion for judgment on the pleadings, matters outside the pleadings shall be excluded by the court, and the court shall expedite the hearing of the motion;
>
> . . . .
>
> (4)     The responding party shall:
>
>> (A)     Without leave of court, have seven days to amend its pleadings to be pled with specificity, and shall include such supporting particulars as are peculiarly within the supporting pleader's knowledge; and
>>
>> (B)     Have the burden of proof and persuasion on the motion;
>
> (5)     The court shall make its determination based upon the allegations contained in the pleadings;
>
> (6)     The court shall grant the motion and dismiss the judicial claim, unless the responding party has demonstrated that more likely than not, the respondent's allegations do not constitute a SLAPP lawsuit as defined in section 634F-1[.]

In turn, HRS § 634F-1 (2016) stated, in relevant part:

> "Public participation" means any oral or written testimony submitted or provided to a governmental body during the course of a governmental proceeding.
>
> "SLAPP" means a strategic lawsuit against public participation and refers to a lawsuit that lacks substantial justification or is interposed for delay or harassment and that is solely based on the party's public participation before a governmental body.

The Citizen Participation in Government Act was repealed and replaced with the Hawaiʻi Public Expression Protection Act, HRS chapter 634G, effective June 17, 2022.  2022 Haw. Sess. Laws Act 96, § 1-5 at 215-18.  The new statute "does not affect . . . proceedings that were begun before its effective date." Id., § 4 at 218.

municipality[,] . . . indicat[ing] a public policy in California that public enforcement actions should not be overly constrained by the anti-SLAPP provisions."

On March 16, 2022, Chevron filed a notice of appeal from the Order Denying Anti-SLAPP Motion. We have jurisdiction over the appeal under the collateral order doctrine to the extent stated in this court's July 22, 2022 Order Granting in Part and Denying in Part Motion to Dismiss.

## II. Standard of Review

"The question of the choice of law to be applied in a case is a question of law reviewable *de novo*[.]" Mikelson, 107 Hawaiʻi at 197, 111 P.3d at 606 (brackets and internal quotation marks omitted) (quoting Jenkins v. Whittaker Corp., 785 F.2d 720, 724 (9th Cir. 1986)). "Therefore, a choice of law issue is a question of law we review under the right/wrong standard." Id. (citing Jenkins, 785 F.2d at 724).

## III. Discussion

Chevron first contends that the Circuit Court erred by failing to apply California law to the Anti-SLAPP Motion. Chevron acknowledges that under Hawaiʻi choice-of-law rules, the law of the state with the most significant relationship to the parties and subject matter should govern a dispute, but argues, based on the dépeçage doctrine, see infra, that the court conducting the analysis "must determine the state that has the most significant interest in the *particular issue* in dispute." Chevron argues that, here, the Circuit Court "failed to distinguish the State with the most significant interest in the Anti-SLAPP Motion from the State with the most significant [interest] in the underlying tort claims[,]" and had the court done so, it would have applied California's anti-SLAPP law to the motion.

Plaintiffs contend that the Circuit Court's choice-of-law analysis was correct – that "the balance of interests favors applying Hawaiʻi law to all issues, including [the] [A]nti-SLAPP [M]otion." More specifically, Plaintiffs argue that Hawaiʻi law

presumptively applies to all issues in the case, the dépeçage doctrine does not change Hawaii's flexible approach to choice-of-law analysis, the Circuit Court thoroughly considered Hawaiʻi and California's respective interests in the Anti-SLAPP Motion, and the Circuit Court correctly ruled that Hawaii's interests outweigh California's in these circumstances.

In determining choice-of-law issues, Hawaiʻi courts "look[] to the state with the most significant relationship to the parties and subject matter." Mikelson, 107 Hawaiʻi at 198, 111 P.3d at 607 (quoting Lewis v. Lewis, 69 Haw. 497, 499, 748 P.2d 1362, 1365 (1988)); see HELG Admin. Serv., LLC v. Dep't of Health, 154 Hawaiʻi 228, 230 n.4, 549 P.3d 313, 315 n.4 (2024). The Hawaiʻi Supreme Court has explained its flexible approach in choice-of-law analysis as follows:

> This court has "moved away from the traditional and rigid conflict-of-laws rules in favor of the modern trend towards a more flexible approach looking to the state with the most significant relationship to the parties and subject matter." Lewis v. Lewis, 69 Haw. 497, 499, 748 P.2d 1362, 1365 (1988) (citing Peters[ v. Peters, 63 Haw. 653, 664, 634 P.2d 586, 593 (1981)]). This flexible approach places "primary emphasis on deciding which state would have the strongest interest in seeing its laws applied to the particular case." Id. Hence, this court has said that the interests of the states and applicable public policy reasons should determine whether Hawaiʻi law or another state's law should apply. See Peters, 63 Haw. at 667-68, 634 P.2d at 595. "The preferred analysis, then in our opinion, would be an assessment of the interests and policy factors involved with a purpose of arriving at a desirable result in each situation." Id. at 664, 634 P.2d at 593.

Mikelson, 107 Hawaiʻi at 198, 111 P.3d at 607 (brackets and ellipsis omitted).

Hawaii's flexible approach to choice-of-law analysis is consistent with the well-settled principle that different jurisdictions' laws can apply to different claims or issues in the same case, sometimes called the dépeçage principle or doctrine.[4/] See, e.g., Jou v. Adalian, Civ. No. 15-00155 JMS-KJM,

---

[4/] The term dépeçage, roughly translated, "refers to the process of cutting something into pieces" — here, "the process of cutting up a case into individual issues" — Ruiz v. Blentech Corp., 89 F.3d 320, 324, n.1 (7th Cir. 1996), and stands for the "routine" rule that a court may properly conduct "separate choice of law analys[e]s of different substantive issues" in the same case. In re Korean Air Lines Disaster of Sept. 1, 1983, 932 F.2d 1475, 1495 (D.C. Cir. 1991); see Allstate Ins. Co. v. Hague, 449 U.S. 302, 307

(continued...)

2018 WL 1955415, at *7-*8 (D. Haw. Apr. 25, 2018) (applying Hawaiʻi choice-of-law rules and concluding that California law governed the plaintiff's spoliation claim, while Hawaiʻi law governed other claims); DeRoburt v. Gannett Co., Inc., 83 F.R.D. 574, 581 n.29 (D. Haw. 1979) ("Traditional choice of law rules have also been used to apply different rules of law to different issues arising in the same case.").

Here, the Circuit Court applied the dépeçage principle by considering the respective interests of California and Hawaiʻi implicated by the Anti-SLAPP Motion. The court recognized that "Mikelson adopted a flexible balancing approach, with no one factor being dispositive[,]" looked at all relevant factors, and determined that California law did not govern the motion.[5/]

In particular, the Circuit Court observed that the Plaintiffs are in, and have "specific, enduring, and substantial attachments to[,]" Hawaiʻi, "[t]here are some Hawaiʻi [d]efendants," and "[t]he alleged damages include harm to the shoreline, infrastructure, buildings, and economy of Hawaiʻi[,]" all of which weighed in favor of applying Hawaiʻi law. In analyzing Chevron's argument that its allegedly tortious conduct all emanated from California, the court considered these Hawaiʻi-focused factors in balancing California and Hawaii's respective interests in the Anti-SLAPP Motion. See infra.

The Circuit Court noted that "Hawaiʻi has its own anti-SLAPP law, HRS Chapter 634F, which is more limited than California's version[,]" and "protects testimony to a governmental body during a government proceeding." The court concluded that "Hawaiʻi's legislative policy does not favor the protection sought by this motion[,]" which "weigh[ed] against applying California's anti-SLAPP law in Hawaiʻi." The court also observed that "California's anti-SLAPP law may not protect

_____

[4/] (...continued)
(1981) (noting "the recognition, long accepted by this Court, that a set of facts giving rise to a lawsuit, or a particular issue within a lawsuit, may justify . . . application of the law of more than one jurisdiction.").

[5/] The Circuit Court did not expressly state that Hawaiʻi law governed the Anti-SLAPP Motion, but that was the clear implication of its analysis and its decision to deny the motion.

Chevron if a similar suit were brought in California by a California municipality[,]" because two provisions of the law, Cal. Civ. Proc. Code §§ 425.16(d) and 731, when read together, "indicate that city public nuisance actions are not protected by the anti-SLAPP law." The court acknowledged that the statutory language "can be parsed and distinguished," but concluded that "it generally indicates a public policy in California that public enforcement actions should not be overly constrained by the anti-SLAPP provisions[,]" which weighed against applying the law in Hawaiʻi.

Addressing Chevron's argument that "the allegedly tortious conduct would all originate in its California headquarters[,]" the Circuit Court noted that "this is not alleged in Plaintiffs' operative pleading and is disputed." The court concluded that even if all of Chevron's conduct did emanate from California, this was "a factor to consider, along with where the alleged harm occurred, where the alleged victims reside, etc.," such that the origination factor "weigh[ed] in favor of applying California's anti-SLAPP law, but not substantially." Indeed, because Chevron and the other defendants allegedly marketed their products in Hawaiʻi, with harmful effects that allegedly occurred in Hawaiʻi, Hawaiʻi has a strong interest in protecting its residents from the alleged misconduct and the claimed broad sweep of an anti-SLAPP law that threatens to immunize such conduct.

The Circuit Court also recognized that "California's anti-SLAPP law has a 'commercial speech' exception[,]" and was "not clearly convinced one way or the other on this limited record" whether the exception applied to the alleged conduct. The court concluded that "if this factor weigh[ed] at all, it weigh[ed] slightly in favor of applying California's anti-SLAPP law."

Based on a careful balancing of these multiple relevant factors, the Circuit Court denied the Anti-SLAPP Motion, reasoning that California did not have a sufficient interest to warrant applying its anti-SLAPP law in these circumstances. On this record, we cannot say that the court erred in balancing "the

11

interests and policy factors involved with a purpose of arriving at a desirable result in [this] situation." Mikelson, 107 Hawaiʻi at 198, 111 P.3d at 607 (quoting Peters, 63 Haw. at 664, 634 P.2d at 593). If anything, the Circuit Court may have underweighted Hawaii's interest in protecting its residents from the allegedly tortious conduct. See supra. Any underweighting of these interests was harmless, however, in light of the resulting balance the court reached.

Chevron argues that the Circuit Court improperly considered Hawaii's interest in Plaintiffs' "underlying tort claims," by recognizing that "[t]here are some Hawaiʻi Defendants" and "[t]he alleged damages include harm to" Hawaiʻi. According to Chevron, the court should have conducted a separate, narrower analysis that considered only California's and Hawaii's interests in the Anti-SLAPP Motion, divorced from Hawaii's interests in the claims that are the subject of the motion. Chevron urges this more limited choice-of-law analysis, while also arguing for purposes of the anti-SLAPP-law analysis that the alleged misconduct amounts to political speech intended to influence public debate rather than commercial speech intended to sell gas to consumers - a disputed issue implicating the merits of Plaintiffs' claims. In other words, in these circumstances, California and Hawaii's respective interests in the Anti-SLAPP Motion are not so neatly cut and separated from Hawaii's interests in protecting its residents from the alleged misconduct. The merits of Plaintiffs' claims bleed into the merits of Chevron's anti-SLAPP defense. In these circumstances, a blinders-on approach to choice-of-law analysis runs counter to the "flexible approach" the supreme court applied in Mikelson, which instructs Hawaiʻi courts to balance "the interests and policy factors involved with a purpose of arriving at a desirable result in each situation." 107 Hawaiʻi at 198, 111 P.3d at 607 (quoting Peters, 63 Haw. at 664, 634 P.2d at 593).

We further note that the Circuit Court's analysis is consistent with a number of federal court decisions that have declined to apply California's anti-SLAPP statute in lawsuits brought outside of California. See, e.g., Kesner v. Baker Botts

12

L.L.P., No. 3:20-cv-01084-WSH-DEB, 2020 WL 5966228, at *3 (S.D. Cal. Oct. 8, 2020) ("district courts have been reluctant to apply California's anti-SLAPP statute extraterritorially even with the presence of California factors when California's interest is not sufficiently strong"); Ayyadurai v. Floor64, Inc., 270 F. Supp. 3d 343, 349 (D. Mass. 2017) (declining to apply California's anti-SLAPP statute in a case involving a California defendant, California tortious conduct, and a Massachusetts plaintiff, citing Massachusetts's "interest in protecting its citizens from tortious conduct");[6] Schering Corp. v. First DataBank Inc., No. C 07-01142 WHA, 2007 WL 1176627, at *6 (N.D. Cal. Apr. 20, 2007) (applying New Jersey choice-of-law principles: "How individual states choose to prevent the abuse of process within their own courts is best left to individual states to decide for themselves. And while 'California has a great interest in determining how much protection to give California speakers,' . . . California's legislative policies designed to deter baseless tort actions should have no bearing on actions filed in New Jersey." (citation omitted)). Indeed, the Circuit Court's weighing of the relevant factors is consistent with the analytical approach taken by the United States District Court for the District of Hawaiʻi in Ratner v. Kohler, Civ. No. 17-00542 HG-KSC, 2018 WL 1055528, at *4-6 (D. Haw. Feb. 26, 2018), where the court ultimately applied California law to a defamation claim and an anti-SLAPP motion based on Hawaiʻi choice-of-law principles. There, the court concluded that California had the most significant relationship to the parties and the subject matter, because the plaintiff's "purported damages would most likely occur in California where he resides and conducts his business[,]" the defendant's allegedly defamatory Facebook post stated that "the purported rape took place in California," and the plaintiff had presented "no evidence that the circulation of

---

[6]     Like Hawaiʻi, Massachusetts enacted an anti-SLAPP statute that applies to claims involving a person's exercise of their right to petition (or participate in) the government, and "not to claims involving a person's exercise of free-speech rights more generally . . . ." Ayyadurai, 270 F. Supp. 3d at 354. More specifically, Hawaii's former statute, HRS Chapter 634F, protected testimony to a governmental body during a government proceeding. See supra note 3.

Defendant's Facebook post was limited to users in Hawaii and was not available to users in California." Id. at *6.  Here, faced with allegations that Defendants marketed their products in Hawaiʻi, with harmful effects that occurred in Hawaiʻi, the Circuit Court considered the same type of factors in determining that California did not have the most significant relationship to the parties and the subject matter for purposes of the Anti-SLAPP Motion.

Chevron relies on another line of federal cases that apply the "separate" analysis that Chevron favors in this context and that purportedly give the defendant's domicile "near-dispositive weight in any choice-of-law analysis concerning an anti-SLAPP motion." See, e.g., Underground Sols., Inc. v. Palermo, 41 F. Supp. 3d 720, 726 (N.D. Ill. 2014) (observing that the "'place of injury . . . is less important' in 'the anti-SLAPP context'" (quoting Chi v. Loyola Univ. Med. Ctr., 787 F. Supp. 2d 797, 803 (N.D. Ill. 2011)); Diamond Ranch Acad., Inc. v. Filer, 117 F. Supp. 3d 1313, 1323 (D. Utah 2015) (noting that "the place where the injury occurred" has "little, if any, relevance in this area of law"); Glob. Relief v. N.Y. Times Co., 2002 WL 31045394, at *11 (N.D. Ill. Sept. 11, 2002) ("California has a great interest in determining how much protection to give California speakers").  None of these cases appears to conduct the type of analysis that Mikelson demands of Hawaiʻi courts, i.e., an assessment of all relevant factors in determining the state with the most significant relationship to the parties and subject matter, with no one factor being dispositive.  107 Hawaiʻi at 198, 111 P.3d at 607.  That is the analysis that the Circuit Court conducted here, so as to "arriv[e] at a desirable result in [this] situation." Id. (quoting Peters, 63 Haw. at 664, 634 P.2d at 593).

Accordingly, we hold that the Circuit Court did not err in concluding that California law did not apply to the Anti-SLAPP Motion, and denying the motion on that basis, without considering its merits.  We likewise need not consider the merits of the motion.

## IV.  Conclusion

For the reasons discussed above, the "Order Denying Chevron Defendants' Special Motion to Strike and/or Dismiss the Complaint Pursuant to California's Anti-SLAPP Law," entered on February 15, 2022, in the Circuit Court of the First Circuit, is affirmed.


On the briefs:                          /s/ Clyde J. Wadsworth
                                        Presiding Judge
Melvyn M. Miyagi,
Ross T. Shinyama,
Summer H. Kaiawe                        /s/ Sonja M.P. McCullen
(Watanabe Ing LLP),                     Associate Judge
Theodore J. Boutrous, Jr.
(pro hac vice),
Andrea E. Neuman (pro hac vice),        /s/ Rebecca A. Copeland
Joshua D. Dick (pro hac vice)           Associate Judge
(Gibson, Dunn & Crutcher LLP),
Eica W. Harris (pro hac vice)
(Susman Godfrey LLP)
for Defendants-Appellants


Robert N. Kohn,
Nicolette Winter, and
Jeff A. Lau,
Deputies Corporation Counsel
for Plaintiffs-Appellees